EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ex parte: | 2021 TSPR 62 |
| Overseas Press Club de Puerto Rico | 206 DPR _____ |

Número del Caso: MC-2021-59

Fecha: 6 de mayo de 2021

Representante legal de
Overseas Press Club de Puerto Rico:

      Lcdo. Cirilo F. Cruz Tejeda

Materia: Resolución del Tribunal con Votos Particulares Disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex parte

Overseas Press Club de                    MC-2021-0059
Puerto Rico

RESOLUCIÓN

En San Juan, Puerto Rico, a 6 de mayo de 2021.

La confidencialidad de los procesos judiciales en casos de violencia doméstica es crucial para defender a las víctimas de este mal social. Le da una garantía a las víctimas de que pueden acudir a los tribunales a pedir auxilio sin temor a que sus vidas íntimas se discutan en público, y les ofrece un ambiente seguro y libre de intimidación o escarnio público. Sin esa garantía de confidencialidad, muchas víctimas lo pensarían dos veces antes de buscar una protección judicial que en muchos casos es necesaria para mantener su intimidad, dignidad e integridad física. Es por esto que el Art. 5.005 de la Ley de la Judicatura de 2003, según enmendada, Ley Núm. 201-2003, 4 LPRA sec. 25e, ordena la creación de salas especializadas "para atender con acceso controlado al público los casos de violencia doméstica en todas las regiones judiciales".

En nuestro sistema se garantiza jurisprudencialmente el derecho del pueblo y de la prensa al acceso a información de carácter público. Engineering Services International, Inc. v. Autoridad de Energía Eléctrica de Puerto Rico, 205 DPR _____, 2020 TSPR 103, 105 (2020). No obstante, ese acceso público cede cuando: (1) **una ley lo declara así**; (2) la comunicación está protegida por alguno de los

privilegios evidenciarios que pueden invocar los ciudadanos; (3) **revelar la información puede lesionar los derechos fundamentales de terceros**; (4) se trate de la identidad de un confidente, y (5) sea "información oficial" conforme a la Regla 514 de Evidencia de 2009 (32 LPRA Ap. VI). (Énfasis nuestro). Bhatia Gautier v. Gobernador, 199 DPR 59, 82-83 (2017).

No cabe duda de que la protección de las víctimas de violencia doméstica es de la más alta prioridad y merecedora de la mayor protección jurídica. Reconocemos también el interés legítimo de la prensa en obtener más información de los casos que tienen que ver con este mal social. No obstante, en la balanza de intereses presentes en esta solicitud de información, el mandato de ley para salvaguardar la confidencialidad de los procesos, como protección para las víctimas de violencia doméstica, pesa más que el interés de la prensa de tener acceso a información confidencial. También consideramos en nuestro análisis que está pendiente un proceso penal relacionado y la solicitud de información sin que el imputado sea parte podría incidir sobre su derecho a un proceso imparcial y justo. Ese caso no está ante nosotros y, por eso, el procedimiento utilizado no es el adecuado para obtener la información que se solicita.

El interés legítimo de conocer lo que pueda haber acontecido en un caso no puede ir sobre la garantía de confidencialidad del Art. 5.005, supra, que protege a todas las víctimas futuras de violencia doméstica. No podemos desobedecer la ley y crear un precedente que sirva para desalentar y cohibir a las víctimas de violencia doméstica que buscan protección en nuestros tribunales. El día que hagamos eso habremos perdido la batalla contra este mal que lacera nuestra sociedad y nos conmociona a todos.

Por lo anterior, proveemos no ha lugar a la solicitud ex parte de información que hizo el Overseas Press Club de Puerto Rico.

Notifíquese inmediatamente.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo votó conforme y emitió la expresión siguiente:

Creo que mi récord es claro; fui el primer juez de este honroso Tribunal que, escribiendo para uno de los principales diarios de la Isla, abogué públicamente porque nuestros tribunales se abrieran al escrutinio de las cámaras televisivas y el resto de los medios. El 28 de febrero de 2012, en una columna para el diario El Nuevo Día, señalé, citando al otrora magistrado del Tribunal Constitucional de España, Jorge Rodríguez Zapata Pérez, que "*los*

*medios de comunicación social son un antiséptico eficaz contra los excesos en la aplicación de las leyes frente a posibles abusos del poder".* Véase, *Transparentes*, El Nuevo Día, Edición de 28 de febrero de 2012. Desde entonces, he sido consistente en mi posición de permitir acceso total a la prensa y los medios de comunicación (vídeo y sonido) a todo lo que ocurre en nuestros procesos judiciales, **exceptuando aquellos en los que, por su naturaleza, conllevan asuntos sensitivos a la dignidad de los participantes**, entre otros asuntos. O sea, como suele ocurrir, hay que hacer excepciones, y esta es una de esas.

En esta ocasión el peticionario, en síntesis, nos pide que autoricemos la divulgación de la grabación de lo acontecido durante la vista en la que una joven mujer, Andrea Ruiz Costas, testificaba en un proceso contra el que posteriormente se alega se convirtió en su terrible y cruel verdugo.

Lo primero que surgió en mi mente al examinar esta petición es el precedente que conceder lo solicitado establecería. Si concedemos lo que se solicita, ¿qué efecto tendría eso sobre las víctimas de este terrible mal social que tuvieran la necesidad de acudir en un futuro a nuestras salas especializadas a buscar auxilio ante el martirio que están viviendo? ¿Tendrían razón de mostrarse cautelosas ante el temor de que la grabación de lo que se vierta en ese delicado proceso pueda ser solicitada por cualquier persona o medio para luego ser divulgada al público en general? Me parece que el precedente de conceder lo solicitado, determinando *de facto* que una grabación de este tipo es algo público, sería nefasto por ir en contra precisamente de las víctimas que la Ley pretende proteger. Pensemos en las féminas que, por amor a sus hijos, se cohibirían de buscar la protección que la ley les provee. Jóvenes, adolescentes y niños que, de por sí, generalmente son víctimas también del sufrimiento de su madre maltratada. Estas tendrían que advertir la posibilidad de que, la grabación de lo acontecido en la intimidad de ese proceso pueda terminar en los medios y en los celulares, tabletas y computadoras de los demás niños o jóvenes que comparten con sus hijos y del resto de la comunidad.

Por otro lado, **el Art. 5.005 de nuestra Ley de la Judicatura establece que no todo el mundo puede entrar a ver o escuchar lo que ocurre en el momento en que se solicita una orden de protección en nuestras salas especializadas de violencia**

**doméstica. 4 LPRA sec. 25e. Es claro, entonces, que un proceso tan delicado y necesitado de un ambiente seguro y controlado, no armoniza con la posibilidad de que posteriormente la grabación de este, aunque sea de manera suprimida o limitada, se haga pública por cualquier persona o medio que lo solicite.**

La grabación de lo acontecido en una vista para solicitar una orden de protección es una herramienta necesaria, por ejemplo, como parte de un proceso de revisión en alzada de la denegatoria de esta, si fuera necesaria, o para cualquier otro reclamo que en derecho pudieran hacer tanto la víctima como aquella persona contra quien va dirigida la orden. Extender su uso como se pretende, no me queda duda que no se ajusta al espíritu de lo establecido en la Ley de la Judicatura, y pragmáticamente le restaría confianza a un proceso que, por su naturaleza, demanda todo lo contrario.

En vista de lo anterior, estoy conforme con la denegatoria de lo solicitado.

La Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señor Estrella Martínez y señor Colón Pérez emitieron votos particulares disidentes por separado.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex Parte:

Overseas Press Club de
Puerto Rico

MC-2021-0059

La Jueza Presidenta Oronoz Rodríguez emitió un Voto Particular disidente.

> "La luz es el mejor de los desinfectantes."[1]

En San Juan, Puerto Rico, a 6 de mayo de 2021.

Conforme a mi postura a favor de la transparencia de los procesos judiciales, **se deben divulgar las grabaciones solicitadas para que todo el proceso en controversia esté de cara al sol.**

Desde el día uno como Jueza Presidenta, adopté como uno de los pilares de mi administración la transparencia en todo el quehacer del Poder Judicial. Así lo reflejan las múltiples medidas implementadas en los últimos 5 años. Por eso, ante los reclamos de transparencia, hoy más que nunca impera actuar con ese postulado que asumí desde que juré a mi cargo.

---

[1] Palabras del pasado Juez Asociado del Tribunal Supremo de los Estados Unidos, Louis D. Brandeis.

El sábado, 1 de mayo, empeñé mi palabra ante el País. Lo hice con la convicción de que la violencia de género es un mal que hay que atender y erradicar con carácter de urgencia. Ante la seriedad de los señalamientos sobre casos donde víctimas -como Andrea Ruiz Costas- habían solicitado la intervención judicial previo a los actos de violencia que terminaron con sus vidas, ordené medidas específicas e inmediatas. Expresé, sin rodeos, que asumiríamos nuestra responsabilidad sin excusas y que rendiríamos cuentas. Cumpliremos.

Hoy no tomo la decisión de divulgar estas grabaciones de forma liviana. Antes, imperó en mi análisis el balance cuidadoso de los intereses en conflicto: de un lado el derecho al acceso a la información, la naturaleza pública de los procesos judiciales y de otro la política pública -**importantísima**- de proteger la dignidad, la privacidad, y la intimidad de una víctima de violencia de género.

Y es que los asuntos que se atienden al amparo de la Ley de Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, 8 L.P.R.A. sec. 631, podrían levantar la necesidad de proteger el testimonio de la perjudicada o alguna información de naturaleza íntima, personal o familiar para no revictimizarla. Los testimonios y los detalles que se ventilan en estos procesos atañen, en múltiples ocasiones, el ámbito íntimo de una víctima, su vida personal, familiar, y la narración de las agresiones y de su sufrimiento, no se pueden tomar livianamente y, mucho menos, a la ligera. Para

mí, tienen el más alto rango, y es nuestro deber procurar que se proteja la inviolabilidad de la dignidad del ser humano. Un ser humano que, en este caso, no está viva para expresarse y defenderse de ataques a su dignidad y reputación. No dudo que este fue el principio que imperó al emitirse la Orden Protectora de la grabación de la vista de causa para arresto en el caso de Andrea Ruiz Costas.

Más aún, no quisiera que, en un momento convulso para el país ante la cruda realidad de la crisis de violencia de género, nuestras acciones disuadan a otras víctimas de violencia de acudir a los tribunales. Es importante no aumentar el efecto amedrentador ("chilling effect"). Jamás podemos propiciar que la creencia en las víctimas de que su testimonio no será privado, que no será protegido y que será divulgado, sin límites, a los medios de comunicación para el escrutinio y, en ocasiones, al escarnio público.

No obstante, ayer miércoles, cuando la petición llegó ante este Tribunal, no conocíamos la posición de la parte con más interés en el asunto,[2] la familia de Andrea, quien tendría el interés mayor de velar por su intimidad y memoria. En este momento podemos tomar conocimiento judicial de que anoche tarde los familiares de Andrea hicieron declaraciones escritas[3] en las que solicitaron que se divulguen los audios.

---

[2] Si bien en los medios de comunicación, tanto el Ministerio Público como la Procuradora de las Mujeres han esbozado sus posiciones, diametralmente opuestas cabe señalar, lo cierto es que no lo han hecho ante los tribunales.

[3] Familia de Andrea Ruiz Costas pide se divulguen grabaciones de sus vistas judiciales, Periódico Metro Puerto Rico, disponible en https://www.metro.pr/pr/noticias/2021/05/05/familia-andrea-ruiz-costas-pide-se-divulgen-grabaciones-vistas-judiciales.html

Siendo así, reitero mi posición de que se entreguen las grabaciones, <u>primero a la familia de Andrea</u>, para que tenga la oportunidad de escucharlas antes y, si lo estiman necesario, alerte sobre cualquier objeción de su contenido, y luego al País.

En vista de que este tribunal resuelve otra cosa, disiento del proceder de la Mayoría.


                                        Maite D. Oronoz Rodríguez
                                             Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *Ex parte:* | | |
| Overseas Press Club de Puerto Rico | MC-2021-59 | |

Voto particular disidente emitido por el Juez Asociado señor ESTRELLA MARTÍNEZ

En San Juan, Puerto Rico, a 6 de mayo de 2021.

**Nos encontramos ante un estado de emergencia que requiere actuar con urgencia y transparencia. Andrea Cristina Ruiz Costas se ha convertido en uno de los principales rostros de esa emergencia. Su calvario tiene que ser estudiado y analizado por todas las instituciones públicas concernidas, pero también por la sociedad. Como últimos intérpretes del derecho en nuestra jurisdicción, este Tribunal tenía el deber de reconocer que, si algún expediente judicial era conveniente que fuese divulgado por el bien del interés público, de las partes involucradas y del propio sistema judicial, es el del caso de Andrea Cristina Ruiz Costas. Si todos los poderes del Gobierno de Puerto Rico han anunciado la adopción de medidas e iniciativas dirigidas a autoevaluarse y tomar pasos de acción afirmativos para lidiar con el estado de emergencia, considero que el Pueblo**

**de Puerto Rico a través del cuarto Poder – la prensa- debió tener acceso a lo solicitado, a fin de ejercer el rol de fiscalización y contar con la información pública que obra en manos del Poder Judicial. Esa es una prerrogativa constitucional que en este contexto histórico cobra plena vigencia. Al así no hacerlo, y por las razones que expondré a continuación, disiento del proceder mayoritario. Veamos.**

**I**

Como es conocido, el derecho de acceso a la información pública es un principio inherente de toda sociedad democrática, por lo que la divulgación debe ser la norma y no la excepción. Engineering Services International, Inc. v. Autoridad de Energía Eléctrica, 2020 TSPR 103 (citas omitidas). En ese sentido, este derecho garantiza que toda persona pueda examinar el contenido de los expedientes, informes y documentos que hayan sido recopilados por el Estado en sus gestiones gubernamentales. Íd. (citando a Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161, 175 (2000). Ello, en virtud de que su ejercicio está estrechamente atado con los derechos a la libertad de palabra, prensa y asociación. Art. II, Sec. 4, Const. ELA, LPRA, Tomo 1; Trans Ad de P.R. v. Junta de Subastas, 174 DPR 56, 67 (2008); Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161 (2000); Soto v. Srio. de Justicia, 112 DPR 477, 485-486 (1982).

La importancia del derecho de acceso a la información pública radica en la noción de que el conocimiento de la gestión pública facilita la libre discusión de los asuntos

gubernamentales y el ejercicio pleno de los derechos constitucionales implicados. <u>Colón Cabrera v. Caribbean Petroleum</u>, 170 DPR 582, 590 (2007). Asimismo, este acceso le permite a la ciudadanía fiscalizar la función pública de forma más adecuada mientras se promueve la transparencia en la función gubernamental. <u>Engineering Services International, Inc. v. Autoridad de Energía Eléctrica</u>, supra, pág. 4 (citas omitidas). Lo anterior, pues, nuestros principios democráticos "garantizan el derecho del pueblo a pasar un juicio fiscalizador sobre todas las acciones y determinaciones del Gobierno". <u>Trans Ad de P.R. v. Junta de Subastas</u>, supra, pág. 67.

Tal y como se ha reconocido por este Tribunal, ""[h]oy día la secretividad en los asuntos públicos es excepción y no norma". <u>Santiago v. Bobb y El Mundo, Inc.</u>, 117 DPR 153, 159 (1986). Ello, debido a que "[p]ermitir que el gobierno maneje los asuntos públicos bajo el manto de la secretividad es invitar a la arbitrariedad, la mala administración, la indiferencia gubernamental, la irresponsabilidad pública y la corrupción". E. Rivera Ramos, <u>La libertad de información: Necesidad de su reglamentación en Puerto Rico</u>, 44 Rev. Jur. UPR 67, 69 (1975). Por tanto, el derecho de acceso a la información pública requiere necesariamente que el Estado divulgue información con miras de "expeditar el camino de los ciudadanos interesados --inclusive críticos y adversarios-- en averiguar la verdad y no sembrar el camino de obstáculos". <u>Soto v. Srio. de Justicia</u>, supra, pág. 504.

Sin embargo, este derecho no es irrestricto. Existen circunstancias particulares en las que el Estado puede reclamar que se preserve la confidencialidad de cierta información pública. A esos efectos, para que un reclamo de confidencialidad triunfe, el Estado debe probar de manera precisa e inequívoca la aplicabilidad de cualquiera de las siguientes circunstancias: (1) que una ley así lo declara; (2) que la comunicación está protegida por algún privilegio evidenciario; (3) que la divulgación de la información puede lesionar derechos fundamentales de terceros; (4) que se trata de un confidente, según la Regla 515 de Evidencia de 2009, 32 LPRA Ap. VI, o (5) que sea información oficial conforme a la Regla 514 de Evidencia de 2009, 32 LPRA Ap. VI. Santiago v. Bobb y El Mundo, Inc., supra.

Al invocar alguna de tales restricciones para limitar el acceso a la información, el Estado debe satisfacer los criterios de un escrutinio estricto. Bhatia Gautier v. Gobernador, 199 DPR 59, 82 (2017); Ortiz v. Dir. Adm. de los Tribunales, supra, pág. 178; Colón Cabrera v. Caribbean Petroleum, supra, pág. 593. Es decir, "el Estado tiene la carga de probar que satisface cualquiera de las excepciones antes enumeradas". Colón Cabrera v. Caribbean Petroleum, supra, pág. 591. En consecuencia, la negación del Estado a divulgar asuntos públicos debe estar debidamente fundamentada y justificada, ya que no basta con meras generalizaciones. Santiago v. Bobb y El Mundo, Inc., supra.

Bajo este enfoque, resulta claro que los tribunales deben ser "cautelosos en conceder livianamente cualquier pedido de confidencialidad del Estado". Santiago v. Bob y El Mundo, Inc., supra. Así, "[a]nte la hermética resistencia del Estado a viabilizar el derecho de acceso a la información, corresponde a los tribunales franquear el camino". Soto v. Srio de Justicia, supra, pág. 504. Lo contrario, seguramente, representaría un retroceso a los pasos avanzados que ha dictaminado este Tribunal en favor del derecho de acceso a la información fundamental y a la igualdad entre el Estado y los ciudadanos y las ciudadanas. Engineering Services International, Inc. v. Autoridad de Energía Eléctrica, supra, pág. 6 (citando a Santiago v. Bobb y El Mundo, Inc., supra, pág. 160).

## II

De entrada, resulta preciso destacar que aquí no está en controversia que la información solicitada por el Overseas Press Club de Puerto Rico (OPCPR) constituye un documento público. Así surge de las Reglas de administración del Tribunal de Primera Instancia al disponer expresamente que "[l]os expedientes judiciales son públicos". Íd., R. 32(A)(1). Del mismo modo, la grabación de una vista en la que se dilucida la concesión de una orden de protección es considerada parte del expediente judicial, puesto que la propia regla así cataloga a toda forma que recoja lo acontecido en tales vistas. Íd., R. 32(A)(6). Así, habiéndose determinado que la información que solicita el OPCPR emana

de un documento público, nace el derecho de la ciudadanía a acceder a tales grabaciones.

En este contexto, resulta preciso reiterar mi postura firme de que los procedimientos judiciales se caractericen por la más amplia accesibilidad y transparencia. Esto, con el propósito de que la ciudadanía tenga un mayor acceso a los procesos judiciales, mientras que, al mismo tiempo, se protegen los derechos que amparan a la prensa. In re Enmdas. Regl. Uso de Cámaras Proc. Jud., 193 DPR 475, 502 (2015) (Estrella Martínez, voto particular). Así, en el proceso de transmisión de vistas, la o el juez "que preside los procedimientos cuenta con amplia discreción para prohibir, concluir o limitar la cobertura de un procedimiento judicial, de porciones de éste o del testimonio de alguno de los involucrados en el proceso". Íd., pág. 511 (citas omitidas). Al así determinarlo, tomará en consideración "el interés de la justicia en proteger los derechos de las partes y de las personas testigos, y para preservar el orden y la buena conducta que debe imperar en el proceso judicial". Íd. (citas omitidas). Siendo ello así, en nuestra jurisdicción "contamos con garantías que disipan las preocupaciones y los cuestionamientos de quienes se oponen a que la prensa tenga acceso a transmitir íntegramente los procesos judiciales". Íd. (citas omitidas).

Ciertamente, la controversia que hoy tenemos ante nos no se ciñe propiamente a la transmisión de vistas, sino a la solicitud de las grabaciones de un procedimiento judicial

ya finalizado.[4] Sin embargo, ello no es óbice para que estas mismas garantías sean extensivas al proceso de la divulgación de los expedientes judiciales cuando así lo entendamos meritorio. En ese sentido, consecuentemente he reconocido que tenemos a nuestra disposición "las salvaguardas necesarias para amparar a determinados actores del tracto legal, cuya protección es imprescindible para el descubrimiento de la verdad". ASPRO, Ex parte, 192 DPR 961, 970 (2015) (Estrella Martínez, voto particular disidente) (citando a *In re: C. 15;* Regl. Uso Cámaras Proc. Jud., 188 DPR 424, 446 (2013) (Estrella Martínez, voto particular de conformidad). Y es que, como norma general, no puede ser de otro modo debido a que los foros judiciales cuentan con las herramientas necesarias para que, tanto la transmisión como la divulgación de la regrabación de las vistas judiciales,

---

[4]En cuanto a este particular, resulta importante destacar que el Artículo 5.005 de la *Ley de la judicatura del Estado Libre Asociado de Puerto Rico de 2003* reconoce a la jueza o al juez que preside la sala de un procedimiento bajo la *Ley para la prevención e intervención con la violencia doméstica*, conocida como la Ley 54, la discreción debida para atender estos casos con "acceso controlado al público para salvaguardar la identidad de la víctima. . .". 4 LPRA sec. 25e. Adviértase que este articulado va dirigido a establecer un control en la celebración prospectiva de procedimientos bajo la Ley 54, lo cual lo hace inaplicable a este caso particular. En ese sentido, resulta meridianamente claro que el precitado artículo no tiene el efecto de dotar el proceso con carácter de confidencialidad de forma prospectiva y, mucho menos, retroactivamente. En cambio, aún bajo la lógica de la resolución mayoritaria, contamos con controles adicionales para atender cualquier situación específica que requiera excepcionalmente no divulgar algún aspecto del expediente judicial. Ahora bien, reitero la inaplicabilidad de tal articulado al caso de autos, máxime, cuando la petición ante nos no amerita ese trato excepcional de secretividad.

retengan su carácter público con las salvaguardas necesarias.

El carácter excepcional de confidencialidad que pudiese representar la solicitud de regrabación de las vistas se debe reservar, exclusivamente, para aquellas instancias en las que la o el juzgador que preside los procesos dictamine que, en virtud de los fundamentos y las justificaciones apremiantes presentadas por el Estado, sea meritorio que se adopten ciertas medidas protectoras que garanticen la confidencialidad. Tal y como he reiterado antes, "la transmisión de los procedimientos judiciales facilita el acceso a la información, la transparencia proactiva y constituye un valioso mecanismo para prevenir la corrupción en el sistema judicial y en las fuerzas del orden público". ASPRO, Ex parte., supra, pág. 971 (Estrella Martínez, voto particular disidente). Sin duda, el acceso a los expedientes judiciales pasados debe ser la norma y no la excepción, ya que el acceso a las grabaciones de las vistas ya finalizadas contiene aspiraciones idénticas a las aquí reiteradas.

Cónsono con esto, resulta imperativo destacar que la solicitud de la OPCPR para el acceso a las grabaciones de las vistas en el caso particular de Andrea Cristina Ruiz Costas cobra mayor relevancia debido al interés de la ciudadanía en conocer cómo se manejó el caso y qué realmente sucedió. En ese sentido, la divulgación de la regrabación de las vistas debió ser concedida con los controles o medidas protectoras si fuesen necesarias. Esto, pues, así como la

propia orden protectora emitida por el foro primario contiene unos parámetros que rigen el uso por parte del Departamento de Justicia, este Tribunal, como en cualquier caso de acceso a la información, tiene la facultad de emitir cualquier orden dirigida a proteger información que lesione intereses individuales. Dicho de otro modo, existen los controles para canalizar la petición y no optar por el drástico remedio de denegar en su totalidad la divulgación del expediente.

No puedo avalar la denegatoria a la solicitud que nos ocupa basado en que ello representaría una revictimización de, quien hoy no tiene voz, debido a factores que ameritan ser escudriñados por todos y todas. Aunque comprendo la preocupación que alguien pueda tener en torno a la divulgación de contenidos que pudieran lesionar la intimidad o la dignidad de un ser humano, ésta no es la situación ante nos. Si ello ocurriera en el futuro con alguna víctima que necesite protección, nuestro ordenamiento jurídico permite tomar las medidas protectoras que sean necesarias y advertimos de antemano que esos intereses individuales podrían superar cualquier interés de otra parte por conocer las interioridades de determinado proceso judicial que amerite ser confidencial por vía de excepción.

No podemos escudarnos tampoco en que esta concesión constituirá un disuasivo para que las personas que necesiten una orden de protección acudan a solicitarla, basado en que no desean que se conozcan sus intimidades. Como hemos

apreciado, nuestro ordenamiento cuenta con las salvaguardas necesarias para velar por los intereses individuales y particulares en esos casos en que sea necesario proteger cualquier interés de esa naturaleza. Lo que a mi juicio constituiría un disuasivo es que la situación que enfrentó Andrea ante el sistema no sea sacada a la luz pública para que la verdad aflore.

**En cambio, si algo Andrea Cristina Ruiz Costas quería era ser escuchada y que se tomaran acciones. Que la escucharan y que atendieran su petición; no que meramente fuese oída. Escuchémosla. Igual reclamo levanta su familia. Permitamos que su voz se escuche para que, así como todos los Poderes del Estado se están autoevaluando, la sociedad también pueda hacerlo a través del cuarto Poder. Así lo exige nuestro ordenamiento y la firme política pública a favor del derecho de acceso a la información y la transparencia en las gestiones gubernamentales.**

### III

Por los fundamentos enunciados, disiento del curso de acción seguido por una Mayoría de este Tribunal. En su lugar, declararía "con lugar" la petición presentada por Overseas Press Club de Puerto Rico y, consecuentemente, ordenaría la divulgación de lo solicitado.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex parte:

Overseas Press Club de          MC-2021-0059

Puerto Rico

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 6 de mayo de 2021.

Cónsono con nuestras previas posturas que revelan una defensa constante del derecho al acceso a la información pública, y luego de un detenido análisis de los intereses aquí involucrados, disentimos de la determinación a la cual llega esta Curia en el día de hoy. Una que no permite que el *Overseas Press Club de Puerto Rico*, un prestigioso gremio que agrupa a los periodistas del País, tenga acceso a los expedientes y las grabaciones del proceso judicial en que la joven Andrea Ruiz Costas -- víctima de la ola de violencia de género que arropa nuestro Pueblo -- figuró como parte y que se celebró en la Región Judicial de Caguas los días 25, 26 y 31 de marzo de 2021. Varias son las razones para nuestro disenso.

Primero, y tal como expresamos en *Bhatia Gautier v. Gobernador*, 199 DPR 59, 176 (2017) (Colón Pérez, opinión disidente), "[e]l acceso a la información pública es piedra angular en nuestro sistema democrático de gobierno". En virtud de ello, como regla general, y salvo contadas excepciones -- como lo puede ser que una ley lo impida, que se invoque algún privilegio evidenciario, que se trate de la identidad de un confidente, que sea información oficial conforme a la Regla 514 de Evidencia, 32 LPRA Ap. VI, o cuando se pudiesen lesionar derechos de terceros -- los documentos que resultan de la gestión pública deben estar sujetos a ser escudriñados por los ciudadanos y ciudadanas. *Íd.*, pág. 179.

Segundo, y de conformidad con los criterios antes expuestos, en cuanto a la naturaleza de las vistas celebradas en el presente caso, es menester señalar que, de una cuidadosa lectura de los postulados de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, 4 LPRA sec. 25e, según enmendada, y la Ley Núm. 54 de 15 de agosto de 1989, 8 LPRA sec. 601 *et. seq.*, según enmendada -- conocida como la Ley para la prevención e intervención con la violencia doméstica -- podemos colegir que nada en éstas expresamente establece que los procesos judiciales para la solicitud de una orden de protección al palio de este último estatuto quedan revestidos de total confidencialidad. Esto, a diferencia de como sucede, por ejemplo, en los casos de relaciones de familia. Ahora bien, que ello sea así no impide que -- tal

como nos requiere la normativa constitucional previamente mencionada -- seamos juiciosos en la diseminación de la información antes descrita, toda vez que representa la constancia en récord de eventos traumáticos en la vida de una persona.

Tercero, y a la luz de lo antes dicho, nada impedía que este Tribunal -- tras haber revisado el contenido de los expedientes y las grabaciones en controversia, cosa que aquí no se hizo -- pudiese pasar juicio sobre lo expuesto en ellas, para así determinar qué de lo allí dicho podía ser objeto de diseminación pública y qué no. Teniendo presente, como bien señalamos previamente, el que no se lesionaran derechos de terceras personas.[5] Planteamiento que -- en lo relacionado a esta petición -- vemos difícil que prospere, toda vez que la familia de Andrea Ruiz Costas públicamente ha peticionado que la información aquí solicitada se haga disponible.

Sin lugar a dudas, el acceso a dicha información, con las salvaguardas antes mencionadas, no solo hubiese sido útil para que la prensa del país pudiese cumplir de forma adecuada su labor de informar al Pueblo, como correctamente lo señala en su petición el *Overseas Press Club de Puerto Rico*, sino también para que los poderes gubernamentales puertorriqueños

---

[5] Similar ejercicio -- correctamente -- realizó el Juez Administrador de la Región Judicial de Caguas, Hon. Ricardo Marrero Guerrero, ante una solicitud parecida a la que está ante nuestra consideración y cursada por el Ministerio Público. Decisión que, si la parte que la solicitó no estaba conforme, por entender que era necesario un mayor acceso a la información, siempre tenía la oportunidad de solicitarle una reconsideración al ilustrado juez del Tribunal de Primera Instancia.

-- a saber, el Poder Ejecutivo, el Poder Legislativo y el Poder Judicial -- tuvieran unos datos certeros que le ayudasen en el proceso de auto evaluación e introspección en cuanto a  los servicios y recursos disponibles para las víctimas de violencia de género. Proceso que, como cuestión de hecho, los tres (3) líderes de las ramas de gobierno han iniciado ya. No nos podemos abstraer de la realidad que las víctimas de violencia de género viven.

Lamentablemente, y distinto a lo antes señalado, el camino que hoy siguió una mayoría de este Tribunal sólo abona a aumentar el nivel de desinformación que determinadas personas -- sin verdaderamente conocer los detalles que dieron lugar a los tristes y lamentables incidentes que hoy se viven en nuestro Puerto Rico -- han creado en el País. Esto, ya que en ningún momento esas personas tuvieron o han tenido acceso a la información que este Tribunal hoy no permite que se divulgue; la cual, sin duda alguna, hubiese revelado lo que realmente ocurrió en las vistas judiciales celebradas en la Región Judicial de Caguas los días 25, 26 y 31 de marzo de 2021.

**En fin, en escenarios tan particulares como éstos, donde el País reclama mayor transparencia y rendición de cuentas, y parafraseando a Louis Brandeis, juez de la Corte Suprema de Justicia de los Estados Unidos a principios del Siglo XX, hoy algunos de mis compañeros y compañera de estrado olvidan**

que "*la luz del sol es el mejor de los desinfectantes*". Por eso, yo disiento.


                                    Ángel Colón Pérez
                                     Juez Asociado